UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BLACK MOUNTAIN EQUITIES, INC.,

   Plaintiff,

-against-

ADVANCED CELL TECHNOLOGY, INC.,

   Defendant.

---

11 CIV 7305

Docket No.:

COMPLAINT



Plaintiff Black Mountain Equities, Inc. ("BME"), by its attorneys, Olshan Grundman Frome Rosenzweig & Wolosky LLP, for its Complaint states:

## INTRODUCTION

1.  On August 31, 2011, BME made a cashless exercise of warrants issued by Defendant Advanced Cell Technology, Inc. ("ACTC") by properly delivering its Notice of Exercise. Pursuant to the Notice of Exercise, BME was entitled to 18,000,000 shares of ACTC common stock. Without justification or cause, ACTC has refused to honor the Notice of Exercise, refusing to deliver a single share to BME. In the interim, the price of ACTC stock has declined and there is a risk that it will decline further and BME will suffer financial loss as a result.

## PARTIES

2.  Plaintiff Black Mountain Equities, Inc. ("BME") is a corporation duly organized and existing under the laws of the State of California with its principal place of business in San Diego, CA 92129.

3.Upon information and belief, Defendant Advanced Cell Technology, Inc. ("ACTC") is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Marlborough, MA 01752-1168.

## JURISDICTION AND VENUE

4.This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because this is an action between citizens of diverse states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Additionally, the Securities Purchase Agreement and Warrant at issue in this case specify that "[e]ach party hereby irrevocably submits to the exclusive jurisdiction of the state and federal courts sitting in the City of New York, borough of Manhattan for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein (including with respect to the enforcement of any of the Transaction Documents), and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of any such court, that such suit, action or proceeding is improper or inconvenient venue for such proceeding." The Securities Purchase Agreement and Warrant also state that "[a]ll questions concerning the construction, validity, enforcement and interpretation of the Transaction Documents shall be governed by and construed and enforced in accordance with the internal laws of the State of New York, without regard to the principles of conflicts of law thereof."

5.Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1404(a) because the Securities Purchase Agreement and Warrant provide that "[e]ach party agrees that all legal proceedings concerning the interpretations, enforcement and defense of the transactions contemplated by this Agreement and any other Transaction Documents (whether brought against a party hereto or its respective affiliates, directors, officers, shareholders,

1436762-1

employees or agents) shall be commenced exclusively in the state and federal courts sitting in the City of New York."

## FACTUAL BACKGROUND

### The Warrant

6. On September 6, 2006, ACTC closed the previously announced exercise by existing debenture holders of the additional investment right ("AIR") under Section 4.18 of its Securities Purchase Agreement dated September 15, 2005 ("Existing Debenture Financing"). In connection with the closing of the AIR, ACTC entered into a Securities Purchase Agreement (the "Securities Purchase Agreement"), dated as of August 30, 2006 and executed and delivered on September 6, 2006, with the debenture holders exercising the AIR (the "Purchasers"). The Purchasers purchased from ACTC amortizing convertible debentures and warrants to purchase shares of ACTC common stock.

7. BME holds an Amended and Restated Common Stock Purchase Warrant (the "Warrant") which was originally issued on July 29, 2009 pursuant to the Securities Purchase Agreement. BME acquired the Warrant by assignment on or about August 29, 2011 and ACTC issued a new Warrant to BME in its own name. The Warrant allows BME to subscribe for and purchase from ACTC up to 4,000,000 shares, subject to adjustment on or prior to June 30, 2014 upon submission of a conversion notice.

8. The Warrant contained an initial Exercise Price of $0.10, subject to adjustment.

9. In the Warrant, ACTC agreed that the initial Exercise Price of the Warrant was subject to downward adjustment in the event ACTC thereafter issued shares, or securities convertible into shares, at a price that was lower than the initial Exercise Price.

10. In that event, ACTC was obligated to reduce the Exercise Price of the Warrant to such lower price so that the average price of the shares obtainable upon exercise of the Warrant

3

1436762-1

was reduced to the new Exercise Price and to increase the number of shares covered by the Warrant so that the total initial dollar amount of the Exercise Price, upon exercise of the entire Warrant, would remain the same.

    11.    Thus, the Warrants provided, in relevant part:

> If the Company or any Subsidiary thereof, as applicable, at any time while this Warrant is outstanding, shall offer, sell, grant any option to purchase or offer, sell or grant any right to reprice its securities, or otherwise dispose of or issue (or announce any offer, sale, grant or any option to purchase or other disposition) any Common Stock or Common Stock Equivalents entitling any Person to acquire shares of Common Stock, at an effective price per share less than the then Exercise Price (such lower price, the "Base Share Price" and such issuances collectively, a "Dilutive Issuance"), as adjusted hereunder (if the holder of the Common Stock or Common Stock Equivalents so issued shall at any time, whether by operation of purchase price adjustments, reset provisions, floating conversion, exercise or exchange prices or otherwise, or due to warrants, options or rights per share which is issued in connection with such issuance, be entitled to receive shares of Common Stock at an effective price per share which is less than the Exercise Price, such issuance shall be deemed to have occurred for less than the Exercise Price on such date of the Dilutive Issuance), then the Exercise Price shall be reduced and only reduced to equal the Base Share Price and the number of Warrant Shares issuable hereunder shall be increased such that the aggregate Exercise Price payable hereunder, after taking into account the decrease in the Exercise Price, shall be equal to the aggregate Exercise Price prior to such adjustment. Such adjustment shall be made whenever such Common Stock or Common Stock Equivalents are issued. Notwithstanding the foregoing, no adjustments shall be made, paid or issued under this Section 3(b) in respect of an Exempt Issuance. The Company shall notify the Holder in writing, no later than the Trading Day following the issuance of any Common Stock or Common Stock Equivalents subject to this section, indicating therein the applicable issuance price, or of applicable reset price, exchange price, conversion price and other pricing terms (such notice the "Dilutive Issuance Notice"). For purposes of clarification, whether or not the Company provides a Dilutive Issuance Notice pursuant to this Section 3(b), upon the occurrence of any Dilutive Issuance, after the date of such Dilutive Issuance the Holder is entitled to receive a number of Warrant Shares based upon the Base Share Price regardless of whether the Holder accurately refers to the Base Share Price in the Notice of Exercise.

    (Warrant Section 3(b).)

1436762-1

12. ACTC was also required to notify holders promptly of any event which required a downward modification of the Exercise Price and a commensurate increase in the number of shares covered by the Warrant. ACTC was obligated to provide holders with a statement setting forth the Exercise Price after any modification and setting forth a statement of facts requiring such modification.

13. Thus, the Warrant further provided, in relevant part:

> Whenever the Exercise Price is adjusted pursuant to this Section 3, the Company shall promptly mail to each Holder a notice setting forth the Exercise Price after such adjustment and setting forth a brief statement of the facts requiring such adjustment. If the Company issues a variable rate security, despite the prohibition thereon in the Purchase Agreement, the Company shall be deemed to have issued Common Stock or Common Stock Equivalents at the lowest possible conversion or exercise price at which such securities may be converted or exercised in the case of a Variable Rate Transaction (as defined in the Purchase Agreement).

(Warrant Section 3(g)(i).)

The Securities Issuance Giving Rise to an Adjustment to the Warrant's Exercise Price

14. Upon information and belief, during the first three months of 2010, ACTC issued securities to JMJ Financial, Inc. ("JMJ"), which required ACTC to reduce the Exercise Price by the issuance of the securities to JMJ or caused by any other share issuance since July 29, 2009.

15. Although obligated to do so, ACTC did not provide to BME the required notice and calculation of the reduction in the Exercise Price caused by the issuance of the securities to JMJ or caused by any other issuance since July 29, 2009.

16. Based upon public filings by ACTC, BME believes that the Exercise Price of its securities, since the beginning of 2010, has been reduced to approximately $0.03.

BME's Notice of Exercise

17. On August 31, 2011, BME made a cashless exercise of its warrants, properly delivering its Notice of Exercise to ACTC. Pursuant to the Notice of Exercise BME was entitled to receive 18,000,000 shares of ACTC common stock, on or about September 8, 2011.

18. Without justification or cause, ACTC has refused to honor the Notice of Exercise, refusing to deliver a single share to BME.

## FIRST CAUSE OF ACTION
(Failure to Deliver Shares - Relief Sought: Preliminary and Permanent Injunction)

19. Plaintiff repeats the allegations in paragraphs 1 to 18 above.

20. Pursuant to the Warrant and the Securities Purchase Agreement, ACTC is obligated to deliver to BME at least 18,000,000 shares of its common stock.

21. Despite its obligation to do so, ACTC has failed and refused to deliver said shares of stock to BME.

22. As a result of such refusal by ACTC, BME has suffered damages.

23. BME has no adequate remedy at law.

24. In the absence of injunctive relief, BME will suffer irreparable harm.

25. BME requests, therefore, that the Court enter an order requiring ACTC to deliver immediately at least 18,000,000 shares of its common stock to BME.

## SECOND CAUSE OF ACTION
(Failure to Deliver Shares - Relief Sought: Damages)

26. Plaintiff repeats the allegations in paragraphs 1 to 25 above.

27. BME, therefore, seeks an award of damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
(Failure to Provide Notice of Reduction of Exercise Price - Relief Sought: Damages)

28. Plaintiff repeats the allegations in paragraphs 1 to 27 above.

29. Although obligated to do so pursuant to the Warrant and the Securities Purchase Agreement, ACTC failed to provide the notices and related calculations of the reduction in the Exercise Price of BME's securities.

30. As a result of such failure, BME has suffered damages.

31. BME, therefore, seeks an award of damages in an amount to be determined at trial.

WHEREFORE, Plaintiff prays that the Court award the following relief:

  A. On the First Cause of Action, BME requests an order requiring ACTC to deliver immediately at least 18,000,000 shares of its common stock to BME;

  B. On the Second and Third Causes of Action, for damages in an amount to be determined at trial;

  C. On all claims for relief, for interest, attorneys fees, and the costs and disbursements of this action; and

  D. An award to Plaintiff of such other and further relief as the Court deems just and proper.

1436762-1

Dated: New York, New York
October 17, 2011

                    OLSHAN GRUNDMAN FROME
                    ROSENZWEIG & WOLOSKY LLP

By: _____/s/_____

Thomas J. Fleming (TF-4423)
Jennifer L. Heil (JH-4290)
*Attorneys for Plaintiff Black Mountain Enterprises, Inc.*
Park Avenue Tower
65 East 55th Street
New York, New York 10022
(212) 451-2300
tfleming@olshanlaw.com
jheil@olshanlaw.com