**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **Black Mountain Equities, Inc.,** | |
| **Plaintiff,** | 11 Civ. 07305 (PAE) |
| **v.** | |
| **Advanced Cell Technology, Inc.,** | |
| **Defendant.** | |

**DEFENDANT ADVANCED CELL TECHNOLOGY, INC.'S**
**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF BLACK MOUNTAIN**
**EQUITIES, INC.'S MOTION FOR A PRELIMINARY INJUNCTION AND FOR**
<u>**PRELIMINARY DECLARATORY RELIEF**</u>

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
30 Rockefeller Plaza
New York, NY  10112-0015
Telephone: 212-653-8700
Facsimile: 212-653-8701
*Attorneys for Defendant*

## TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ................................................................................1

II. STATEMENT OF FACTS .....................................................................................1

    A.    Advanced Cell .................................................................................1

    B.    Advanced Cell's Transactions With JMJ Financial .................................3

    C.    The Alpha Capital Action And Ensuing Chain Reaction, Including The Instant Copy-Cat Action .................................................................4

III. ARGUMENT ........................................................................................................6

    A.    The Heightened Applicable Standard ...................................................6

    B.    The Motion Should Be Denied Because Compliance With Plaintiff's Proposed Preliminary Injunction Would Be Highly Impracticable, If Not Impossible ........................................................................................7

    C.    Plaintiff Is Not Entitled To Injunctive Relief Because Any Alleged Harm Is Compensable By An Award Of Money Damages ...............................9

    D.    Assuming Arguendo That Plaintiff Somehow Establishes That Its Damages Could Not Be Compensated By A Monetary Award, Plaintiff Cannot Establish A Clear And Substantial Likelihood Of Success On The Merits. ..........................................................................................12

    E.    If An Injunction Is Granted, Plaintiff Should Be Required To Post A Bond ........14

IV. CONCLUSION .....................................................................................................16

# TABLE OF AUTHORITIES

Page(s)

Cases

Alpha Capital Aktiengesellschaft et al. v. Group Management Corp.
2002 WL 31681798 (S.D.N.Y. Nov. 25, 2002)........................................................14

Alpha Capital Aktiengesellschaft v. Advanced Viral Research Corp.,2003
WL 328302 (S.D.N.Y. Feb. 11, 2003)............................................................14, 16

Alpha Capital Anstalt v. Advanced Cell Technology, Inc.
11 Civ. 6458 (PAC) (S.D.N.Y. 2011)........................................................4, 11, 15

Alpha Capital Anstalt v. Advanced Cell Technology, Inc.
09 Civ. 670, Dkt. No. 11 ..............................................................................11

Bano v. Union Carbide Corp.
361 F.3d 696 (2d Cir. 2004)..........................................................................8

Bell & Howell: Mamiya Co. v. Masel Supply Co.
719 F.2d 42 (2d Cir. 1983)............................................................................9

Brodzki v. State of Nebraska
2011 BL (D. Neb. June 23, 2011)....................................................................8

CAMOFI Master LDC, et al. v. Advanced Cell Technology, Inc.
Index No. 652816/2011 (N.Y. Sup. Ct. filed Oct. 13, 2011)....................................5

Celeste Trust Reg. and Esquire Trade & Finance, Inc. v.
Greystone Digital Technology, Inc.
01 Civ. 91 (CBM) ....................................................................................14

Clear Channel Outdoor, Inc. v. City of New York
608 F. Supp. 2d 477 (S.D.N.Y. 2009).............................................................6, 7

Corning Incorporated v. PicVue Electronics, Ltd.
365 F.3d 156 (2d Cir. 2004)...........................................................................8

CRP/Extell Parcel I, LP v. Cuomo
394 Fed. Appx. 779 (2d Cir. 2010)............................................................6, 10, 11

Doctor's Assocs., Inc. v. Distajio
107 F.3d 126 (2d Cir. 1997) *cert. denied,* 522 U.S. 948 (1997).............................14

Dominion Video Satellite, Inc. v. Echostar Satellite Corp.
356 F.3d 1256 (10th Cir. 2004) ....................................................................11

Edgar v. MITE Corp.
457 U.S. 624 (1982)...................................................................................15

Fireman's Ins. Co. of Newark v. Keating
    753 F. Supp. 1146 (S.D.N.Y. 1990)...................................................6, 11

Halifax Fund, L.P. v. Response USA, Inc.
    1997 WL 33173241 (Del. Ch. May 13, 1997)..........................................12

Hardy v. Fisher
    701 F. Supp. 2d 614 (S.D.N.Y. 2010)..................................................7, 12

Interlink Int'l Fin. Svcs., Inv. v. Block
    145 F.Supp.2d 312 (S.D.N.Y. 2011)........................................................16

JSG Trading Corp. v. Tray-Wrap, Inc.
    917 F.2d 75 (2d Cir. 1990).......................................................................6

Kamerling v. Massanari
    295 F.3d 206 (2d Cir. 2002).....................................................................9

Levola v. Fischer
    403 Fed. Appx. 564 (2d Cir. 2010)...........................................................7

Life Techs. Corp. v. AB Sciex Pte. Ltd.
    99 U.S.P.Q.2d 1785 (S.D.N.Y. 2011).......................................................11

Longview Special Finance v. Infinium Labs, Inc.
    06 Civ. 1772...........................................................................................14

Material Handling Products Corp. v. Nacco Materials Handling Group
    1:11-cv-0118, 2011 WL 1205064 (N.D.N.Y. March 28, 2011)..................9

Merrill Lynch v. John M. Doe
    868 F. Supp. 532 (S.D.N.Y. 1994) ...........................................................6

Nokia Corp. v. InterDigital, Inc.
    645 F.3d 553 (2d Cir. 2011)....................................................................14

Passlogix, Inc. v. 2FA Technology, LLC
    08 Civ. 10986 (PKL), 2010 WL 2505628 (S.D.N.Y. June 21, 2010) ...........6, 9, 12

Southex Trading Co. v. Piankay Realties
    59 N.Y.S.2d 362 (N.Y. Sup. 1946)............................................................8

Time Warner Cable, Inc. v. DIRECTV, Inc.
    497 F.3d 144 (2d. Cir. 2007)...................................................................12

Warren Pearl Construction Corporation v. Guardian Life
    Insurance Company of America
    No. 08 Civ. 9445(WHP), 2008 WL 5329962 (S.D.N.Y. Dec. 9, 2008) ....................9

Zugsmith, et al. v. Davis, et al.
    108 F. Supp. 913 (S.D.N.Y. 1952) ........................................................................................10

Statutes

8 Del. C. § 242(b) ...........................................................................................................................8

Other Authorities

Federal Rule of Civil Procedure
    65(c) ................................................................................................................................14
    65(d)..................................................................................................................................8

Defendant Advanced Cell Technology, Inc. ("Defendant" or "Advanced Cell"), by and through the undersigned counsel, submits this Memorandum of Law in Opposition to the Motion for a Preliminary Injunction and for Preliminary Declaratory Relief (the "Motion") of Plaintiff Black Mountain Equities, Inc. ("Plaintiff" or "BME"), as follows.

## I.   PRELIMINARY STATEMENT

Plaintiff is the latest in a group of similarly situated investors who are trying to win a race to courthouse to assert their claims to Advanced Cell's common stock.  Specifically, Plaintiff's Motion seeks preliminary declaratory relief and a preliminary injunction requiring Defendant to deliver at least 18,000,000 shares of its common stock to BME.  However, as explained below, given the current "run on the bank," it would be literally impossible for the Company to satisfy the current competing claims and, therefore, impracticable and inequitable for the Court to grant Plaintiff's Motion.  For this reason alone, the Motion should be denied.

Plaintiff's Motion should also be denied because there is no reason why Plaintiff's claims could not be satisfied by an award of monetary damages.  Finally, Plaintiff is not likely to succeed on the merits of its claim based on the terms of the agreement at issue.

Based on the foregoing, the Court should deny the Motion.

## II.   STATEMENT OF FACTS

The following facts are based upon the allegations in Plaintiff's October 17, 2011 complaint (the "Complaint") and the Declaration of Gary Rabin, chief executive officer of Advanced Cell (the "Rabin Declaration").

**A.   <u>Advanced Cell</u>**

Advanced Cell is a biotechnology company that specializes in the development of cellular therapies for the treatment of diseases and conditions that impact tens of millions of people worldwide.  It applies stem cell-based technologies (both adult and human embryonic)

and other proprietary methods in the field of regenerative medicine to bring patient-specific therapies from the lab bench to the bedside.  Rabin Declaration ¶ 2.

Advanced Cell has three cellular product platforms based on ground-breaking stem cell technology.  It is focused on commercializing its human embryonic stem cell ("hESC")-based Retinal Pigment Epithelial ("RPE") therapy for degenerative retinal disease, for which it recently initiated two Phase 1/2 clinical trials.  It is also developing its hESC-based Hemangioblast (HG) platform for the treatment of blood and cardiovascular diseases.  Advanced Cell is further focused on advancing its Phase 2-approved Myoblast autologous adult stem cell therapy for the treatment of chronic heart failure, advanced cardiac disease, myocardial infarction, and ischemia. Rabin Declaration ¶ 3.

Advanced Cell owns or licenses more than 150 patents and patent applications related to stem cell therapy and regenerative medicine.  It recently secured a patent on its "embryo-safe" single-blastomere technology and in June of 2010 secured a broad patent for production of RPE cells.  Rabin Declaration ¶ 4.

Advanced Cell's common stock is listed and trades publicly on the Over-the-Counter Bulletin Board, under ticker symbol "ACTC.OB," and its common stock closed on November 3, 2011 at $0.105 per share.  Rabin Declaration ¶ 5.

Contrary to the allegations in the Motion, Advanced Cell is not at all insolvent.  *See* Rabin Declaration ¶ 10. ("The Company is able to pay its financial obligations as they come due, and closed the June 2011 quarter with over $16 million cash on hand, virtually no debt, and loses only approximately $3 million on an operating cash basis per quarter.  Additionally, at June 30, 2011, ACT had at its disposal $17 million in an available, but undrawn equity financing commitment from a highly respected biotechnology investment fund"); *id*. ¶ 11 ("Advanced Cell's market capitalization (based upon the September 28, 2011 closing price) of approximately

$248 million reflects investors' confidence in Advanced Cell's viability and potential for growth.").

**B.      Advanced Cell's Transactions With JMJ Financial**

Between February 2008 and March 2010, Advanced Cell entered into several financing transactions with JMJ Financial, Inc. ("JMJ"), pursuant to which Advanced Cell issued to JMJ a total of nine convertible promissory notes.  Rabin Declaration ¶ 6.  The total face amount of the notes was $11,302,000.  Pursuant to the convertible promissory notes, JMJ was entitled to convert all or part of the notes into shares of Advanced Cell's common stock at specified conversion rates.  The specified conversion rates differed from note to note; in each instance the rate was the lesser of (a) a preset price of at least $0.10 per share and (b) 85% of the average of the three lowest trade prices of Advanced Cell's stock in the 20 trading days prior to the conversion.  *Id.*

Advanced Cell disclosed the JMJ financings (including the conversion rates) publicly in its filings with the Securities & Exchange Commission ("SEC"), most recently in March 2011. At various times, JMJ exercised its right to convert portions of the principal amount of the notes into shares of Advanced Cell's common stock.  Rabin Declaration ¶ 7.  Notwithstanding the language of the notes issued to JMJ, *all conversions of principal amounts of the notes were at the conversion rate of $0.10 per share*.  Rabin Declaration ¶ 7.  As the parties agreed, in writing:

> JMJ agrees that as long as it remains practical, it will continue to convert at $0.10 per share, as long as the [Company] continues to make whole on any loss on conversion (the "Conversion Loss") at $0.10 that should have occurred below $0.10 per share, as follows:
>
>> The [Company] will make whole on the Conversion Loss by adding the Make Whole Amount to the balance of the note.  The Make Whole Amount will be calculated as set forth below.  Any such Make Whole Amount will automatically be added to the balance of the Note (under [the Company's] and [JMJ's] expectation that any make whole amounts will tack back to the original date of the note).

Make Whole Amount = ($0.10 – Conversion Price) x
number of shares being converted

*See* Rabin Declaration, Ex A.  Thus, in the event 85% of the average of the three lowest trade

prices of Advanced Cell's stock in the twenty trading days prior to the conversion was less than

$0.10, the conversion was still done at a rate of $0.10 per share and the principal amount of the

note was increased by an amount equal to the difference between conversion at $0.10 per share

and conversion at the lower rate.

JMJ was entitled to convert the additional principal on the same terms as the original

principal.  Rabin Declaration ¶ 8.  Of course, there would be no way to know at the time the

principal was increased whether the price of Advanced Cell stock at the time of a later

conversion of the additional principal would be above or below the lesser of $0.10 per share or

85% of the average of the three lowest trade prices of Advanced Cell's stock in the twenty

trading days prior to the conversion.  *Id.*

C.      **The Alpha Capital Action And Ensuing Chain Reaction,
        Including The Instant Copy-Cat Action**

On or about September 16, 2011, Alpha Capital Anstalt ("Alpha Capital") commenced an

Action entitled *Alpha Capital Anstalt v. Advanced Cell Technology, Inc.*, 11 Civ. 6458 (PAC)

(S.D.N.Y. filed Sept. 15, 2011), seeking a preliminary injunction directing the Company to

deliver at least 39,514859 shares of its common stock to Alpha Capital (the "Alpha Action").  On

October 31, 2011, the Court (Crotty, J.) entered an order granting Alpha Capital's motion and, on

or about November 1, 2011, the Company delivered 39,514,859 shares of its common stock to

Alpha Capital. Rabin Declaration ¶ 15.

The Alpha Action has triggered a chain reaction on the part of other similarly situated

convertible note and warrant holders.  On October 13, 2011, CAMOFI Master LDC and

CAMZHN Master LDC (the "CAMOFI Funds") filed an action in New York Supreme Court

entitled *CAMOFI Master LDC, et al. v. Advanced Cell Technology, Inc.*, Index No. 652816/2011 (N.Y. Sup. Ct. filed Oct. 13, 2011).  On October 20, 2011, the CAMOFI Funds sought to intervene in the Alpha Action.  The Funds argue that they are owed at least 130,795,594 shares of the Company's stock.  On October 27, 2011, Cranshire Capital Master Fund, Ltd. ("Cranshire") also sought to intervene in the Alpha Action.  Cranshire alleges that it is entitled to 12,680,095 shares of Advanced Cell common stock.  Rabin Declaration ¶ 16.

Both the CAMOFI Funds and Cranshire have argued that the competing demands for the Company's common stock will inevitably lead to a shortfall in Advanced Cell common stock, such that there will be no Advanced Cell common stock available to satisfy the claims, if successful, of all similarly situated note and warrant holders.

It is true that in the event all holders of convertible notes and warrants issued by the Company similarly situated to Plaintiff were to file substantially similar actions based upon substantially similar claims and allegations, the Company would not have enough uncommitted authorized shares available to satisfy in full all such claims.  Rabin Declaration ¶ 17.

Indeed, Plaintiff alleges that by reason of the transactions between Advanced Cell and JMJ described above, the exercise price of its Warrant and the number of shares covered by the Warrant have been reset.  Based on these allegations, Plaintiff demands a preliminary injunction directing Advanced Cell to deliver to it at least 18,000,000 shares of its common stock, as well as monetary damages in an amount to be determined at trial.

However, as of November 4, 2011, the Company had a total of 1,686,659,759 shares outstanding and held by shareholders.  The Company has another 63,340,241 of authorized shares.  Of that number, 26,961,273 are reserved for employee stock options and 61,434,351 are now reserved for holders of convertible notes and warrants in the event that they exercise their

conversion rights based upon the notes' and warrants' respective face values.  Rabin Declaration ¶ 18.

In sum, as a result of the competing demands from the Company's warrant and convertible note holders, it would be impracticable, if not impossible, for the Company to immediately issue 18,000,000 shares of its commons stock to the Plaintiff.  In fact, as explained above, 61,434,351 shares are now reserved for holders of convertible notes and warrants.  However, the sum of the shares that are currently being sought by Plaintiff, the CAMOFI Funds and Cranshire is 161,475,689.

## III. ARGUMENT

### A.    The Heightened Applicable Standard

A preliminary injunction is an extraordinary remedy that should not be granted routinely. *Fireman's Ins. Co. of Newark v. Keating,* 753 F. Supp. 1146, 1149 (S.D.N.Y. 1990) (quoting *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir. 1990)).  To obtain a preliminary injunction, the moving party must show (1) that it is likely to suffer irreparable harm without the requested relief and (2) either (i) a likelihood of success on the merits; or (ii) "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."  *CRP/Extell Parcel I, LP v. Cuomo,* 394 Fed. Appx. 779, 781 (2d Cir. 2010); *see also Passlogix, Inc. v. 2FA Technology, LLC,* 08 Civ. 10986 (PKL), 2010 WL 2505628, at *7 (S.D.N.Y. June 21, 2010); *Clear Channel Outdoor, Inc. v. City of New York,* 608 F. Supp. 2d 477, 492 (S.D.N.Y. 2009).  The standard for preliminary declaratory relief is the same as that for a preliminary injunction.  *Merrill Lynch v. John M. Doe,* 868 F. Supp. 532, 536 (S.D.N.Y. 1994).

Moreover, in the case of a mandatory injunction, where (i) an injunction will alter, rather than maintain, the status quo, or (ii) an injunction will provide the movant with substantially all

the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits, a heightened standard applies and the movant must show a "clear" or "substantial" likelihood of success on the merits.  *See Levola v. Fischer*, 403 Fed. Appx. 564, 565 (2d Cir. 2010); *see also Hardy v. Fisher,* 701 F. Supp. 2d 614, 618 (S.D.N.Y. 2010); *Clear Channel Outdoor, Inc.,* 608 F. Supp. 2d at 492 ("The party seeking the injunction must show a clear or substantial likelihood of success where the injunction sought is mandatory – i.e. it will alter, rather than maintain, the status quo").  Here, Plaintiff is seeking a mandatory injunction because it is seeking the transfer to Plaintiff of 18,000,000 shares of Advanced Cell common stock. Consequently, a heightened standard applies to the Motion.

**B.**  **The Motion Should Be Denied Because Compliance With Plaintiff's Proposed Preliminary Injunction Would Be Highly Impracticable, If Not Impossible**

Plaintiff has asked this Court to order Defendant to deliver 18,000,000 shares of stock. However, as explained above, as of November 4, 2011, Advanced Cell had a total of 1,686,659,759 shares outstanding and held by shareholders.  Rabin Declaration ¶ 18.  It has another 63,340,241 of authorized shares.  Rabin Declaration ¶ 18.  Of that number, 26,961,273 are reserved for employee stock options and 61,434,351 are reserved for holders of convertible notes, convertible preferred stock and warrants in the event they exercise their conversion rights based upon the notes' and warrants' respective face values.  Rabin Declaration ¶ 18.

In sum, as a result of the competing demands from the Company's warrant and convertible note holders, it would be impracticable, if not impossible, for the Company to immediately issue 18,000,000 shares of its commons stock to the Plaintiff.   In fact, 61,434,351 shares are now reserved for holders of convertible notes and warrants.  However, the sum of the shares that are currently being sought by Plaintiff, the CAMOFI Funds and Cranshire is

161,475,689.  The numbers clearly show that Advanced Cell does not have a sufficient amount of common stock to satisfy the competing claims. Rabin Declaration ¶ 16.[1]

Where, as here, enforcing a preliminary injunction would be impracticable, it should not be granted as "that which is impossible equity refuses to decree."  *Southex Trading Co. v. Piankay Realties,* 59 N.Y.S.2d 362, 365 (N.Y. Sup. 1946); *see also Bano v. Union Carbide Corp.,* 361 F.3d 696, 716 (2d Cir. 2004) (holding that there was no abuse of discretion in the district court's conclusion that an injunction would be impracticable).

In addition, Plaintiff's request must also be denied because it is impermissibly vague. Plaintiff requests that an order should be entered directing Advanced Cell to deliver "*at least*" 18,000,000 shares of its common stock.  However, Federal Rule of Civil Procedure 65(d) states that "every order granting an injunction . . . shall be specific in terms; shall describe in reasonable detail . . . the act or acts sought to be restrained."  Fed. R. Civ. P. 65(d).  The Rule "reflects Congress' concern with the dangers inherent in the threat of a contempt citation for violation of an order so vague that an enjoined party may unwittingly and unintentionally transcend its bounds." *Corning Incorporated v. PicVue Electronics, Ltd.,* 365 F.3d 156, 158 (2d Cir. 2004); *see also Brodzki v. State of Nebraska,* 2011 BL (D. Neb. June 23, 2011) (ruling that "a broad and vague request is not within the court's power to grant").

In sum, the relief in the Motion would be impracticable to enforce and the request for relief is impermissibly vague in any event.  Therefore, the Motion should be denied.

---

[1]     In addition, pursuant to Delaware law, Advanced Cell could not create additional authorized shares without convening a meeting of the shareholders and taking a shareholder vote, a process which by no means assures that the creation of necessary authorized shares could be accomplished. 8 Del. C. § 242(b)

**C.**   **Plaintiff Is Not Entitled To Injunctive Relief Because Any Alleged Harm Is Compensable By An Award Of Money Damages**

If the Court finds that it would not be impracticable for Defendant to immediately issue 18,000,000 shares of its common stock to Plaintiff, the Motion should still be denied as Plaintiff has failed to show irreparable harm, the single most important element in the injunction analysis. *See Bell & Howell: Mamiya Co. v. Masel Supply Co.,* 719 F.2d 42, 45 (2d Cir. 1983).  Whether the movant will suffer irreparable harm must be adequately established before the court addresses the merits of the movant's injunction request.  *See, e.g., Material Handling Products Corp. v. Nacco Materials Handling Group,* 1:11-cv-0118, 2011 WL 1205064, at *3 (N.D.N.Y. March 28, 2011) ("Having concluded that Plaintiff has failed to establish a likelihood of irreparable harm if the requested relief is denied, the Court need not, and does not, address Plaintiff's probability of success on the merits").  Indeed, the threat of irreparable injury is a "*sine qua non* of a preliminary injunction: If there is no irreparable injury, there can be no preliminary injunction."  *Passlogix,* 2010 WL 2505628, at *7; *see also Warren Pearl Construction Corporation v. Guardian Life Insurance Company of America,* No. 08 Civ. 9445(WHP), 2008 WL 5329962, at *2 (S.D.N.Y. Dec. 9, 2008) (holding that it is well established in the Second Circuit that the irreparable harm requirement is the single most important prerequisite for the issuance of a preliminary injunction).

It is equally well established that a party cannot demonstrate irreparable harm when the harm it faces is compensable by an award of money damages.  *Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir. 2002).  Here, Plaintiff cannot demonstrate irreparable harm because the harm it faces — the non-delivery of shares — is compensable by an award of money damages. For this reason alone, the Motion should be denied.

In an attempt to avoid the consequences of the rule that irreparable harm is not present when the alleged injury is compensable by money damages, Plaintiff alleges that Advanced Cell is insolvent.  Memo of Law at 8.  However, the Second Circuit has held that in order to advance a risk of insolvency as irreparable harm, "a movant must show that the risk of insolvency is *likely and imminent*." *CRP/Extell Parcel I, L.P. v. Cuomo,* 394 Fed. Appx. 779, 782 (2d Cir. 2010) (emphasis added).  *See also Zugsmith, et al. v. Davis, et al.,* 108 F. Supp. 913, 915 (S.D.N.Y. 1952) (holding that the mere expression of fear and apprehension of irreparable injury is not a sufficient basis for granting injunctive relief).

Here, Plaintiff falls far short of establishing that Advanced Cell's insolvency is "likely and imminent." Indeed, not only is the argument that Advanced Cell will be unable to satisfy a potential judgment nothing more than speculation (which is not a sufficient basis for granting injunctive relief), but it is belied by the facts.  *See* Rabin Declaration ¶ 10. ("The Company is able to pay its financial obligations as they come due, and closed the June 2011 quarter with over $16 million cash on hand, virtually no debt, and loses only approximately $3 million on an operating cash basis per quarter.  Additionally, at June 30, 2011, ACT had at its disposal $17 million in an available, but undrawn equity financing commitment from a highly respected biotechnology investment fund"); *id.* ¶ 11. (" Advanced Cell's market capitalization (based upon the September 28, 2011 closing price of its common stock) of approximately $248 million reflects investors' confidence in Advanced Cell's viability and potential for growth.").

In the Alpha Action, the court erroneously ruled against Advanced Cell on this prong and found irreparable harm, reasoning that there was "*a risk* that [Advanced Cell] could not satisfy [a money judgment]" at the end of a trial on the merits.  Order Granting Preliminary Injunction, *Alpha Capital Anstalt v. Advanced Cell Technology, Inc.*, 11 Civ. 6458 (PAC) (S.D.N.Y. 2011) (No. 15) (emphasis added).  However, "a risk" is simply not enough to meet the required

showing that insolvency is likely and imminent, which, in this case, it is not. *CRP/Extell Parcel I, L.P.,* 394 Fed. Appx. at 782.  For this reason, the Alpha Action should not control here.[2]

Plaintiff also attempts to establish irreparable injury by relying on a provision in its Warrant that states that monetary damages would not be adequate compensation for any loss incurred by a breach.  However, Plaintiff's reliance on this provision is misplaced for two reasons.  First, Plaintiff has not and will not establish any breach of the agreement.  Second, "it is clear that the parties to a contract cannot, by including certain language in that contract, create a right to injunctive relief where it would otherwise be inappropriate.[3]"  *Fireman's Ins. Co. of Newark,* at 1154; *see also Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1266 (10th Cir. 2004); *Life Techs. Corp. v. AB Sciex Pte. Ltd.,* 99 U.S.P.Q.2d 1785 (S.D.N.Y. 2011) (holding, in denying plaintiff's motion for a preliminary injunction, that

---

[2]      The court in the Alpha Action also relied on, and Plaintiff cites, *Alpha Capital Anstalt v. Advanced Cell Technology, Inc.,* 09 Civ. 670.  However, that case is easily distinguishable because, as reflected in the pleadings filed in that case (which Plaintiff conveniently ignored), at the time of that action, Advanced Cell was not current in its reporting requirements with the SEC and had provided no detail as to its financial health. *See* Affidavit of William Caldwell at 2, *Alpha Capital Anstalt v. Advanced Cell Technology, Inc.,* 09 Civ. 670, Dkt. No. 11.  That is simply not the case here, as is demonstrated by the Rabin Declaration.  Indeed, in contrast to the situation at the time of that earlier action, Advanced Cell is current in its reporting requirements and its most recent Form 10-K reflects a "clean" audit opinion by its independent auditors.  Rabin Declaration ¶ 9.

[3]      In the Alpha Action, the court ignored this standard, relying on an unpublished opinion and holding that because Alpha Capital bargained for stock in the event that Advanced Cell breached its agreements, money damages would not make Alpha whole.  Order Granting Preliminary Injunction, *Alpha Capital Anstalt v. Advanced Cell Technology, Inc.,* 11 Civ. 6458 (PAC) (S.D.N.Y. filed Sept. 15, 2011) (No. 15).  However, whether or not a party bargained for shares is irrelevant, because the correct standard is whether the alleged harm is compensable by an award of money damages.

contractual language declaring money damages inadequate in the event of a breach does not control the question of whether preliminary injunctive relief is appropriate).[4]

For the foregoing reasons, Plaintiff has failed to demonstrate that it will be irreparably harmed if the Motion is denied, and this Court need not even address the merits of the parties' underlying dispute. *See Passlogix,* 2010 WL 2505628, at *7 ("Having concluded that [the movant] cannot 'meet its burden demonstrating a likelihood of irreparable harm if the requested relief is denied,' the Court need not consider the likelihood of success on the merits or the balance of equities.") (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.,* 497 F.3d 144, 152-3 (2d. Cir. 2007)).

**D.**   **Assuming *Arguendo* That Plaintiff Somehow Establishes That Its Damages Could Not Be Compensated By A Monetary Award, Plaintiff Cannot Establish A Clear And Substantial Likelihood Of Success On The Merits.**

Even assuming that this Court finds that Plaintiff is likely to suffer irreparable injury if injunctive relief is denied, Plaintiff must also demonstrate either: (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, with the balance of hardships tipping decidedly in the movant's favor. *Hardy v. Fischer,* 701 F. Supp. 2d 614, 618 (S.D.N.Y. 2010).[5]  Plaintiff correctly acknowledges that it

---

[4]   The single Delaware case that Plaintiff cites in support of its argument that money damages are not an adequate remedy for the failure of a corporation to meet its obligations under the terms of its securities, *Halifax Fund, L.P. v. Response USA, Inc.,* 1997 WL 33173241 (Del. Ch. May 13, 1997), is inapposite because it concerned a motion for partial summary judgment and a security holder's *unconditional* right to convert preferred stock to common stock. *Id.* at *2.  By contrast, here, the alleged obligation was not triggered unless Defendant issued shares at a price lower that the applicable exercise and conversion prices.  As set forth in the Rabin Declaration, that did not occur.

[5]   Plaintiff makes no argument that it is proceeding under the prong in which it would need to demonstrate sufficiently serious questions going to the merits to make them a fair ground for litigation, with the balance of hardships tipping decidedly in its favor.

must also make a showing of *substantial* likelihood of success, but incorrectly asserts that its

"likelihood of success at trial is not merely substantial but virtually assured."

The crux of Plaintiff's allegations are that: (a) Advanced Cell issued shares at a price of

$0.0353 to JMJ Financial, Inc., and (b) this lower priced issuance obligated Advanced Cell to

notify Plaintiff, to lower Plaintiff's exercise and conversion prices of its warrants and convertible

notes, and to increase the number of shares covered by the warrants.

However, Plaintiff's claim is belied by the explicit terms of the Warrant at issue.  Section

3(b) of the Warrant states that Plaintiff's exercise price shall only be lowered if Advanced Cell:

> shall offer, sell, grant any option to purchase or offer, sell or grant
> any right to reprice its securities, or otherwise dispose of or issue . .
> . any Common Stock or Common Stock Equivalents entitling any
> Person to acquire shares of Common Stock, *at an effective price
> per share less that the Exercise Price*

*See* Warrant ¶ 3(b) (emphasis added).  Plaintiff's Warrant contained an initial exercise price of

$0.10 per share.  *See* Complaint ¶ 8.  As explained in the Rabin Declaration, Advanced Cell has

not issued any common stock for a consideration of less than $0.10 per share.  Rabin Declaration

¶ 7.

In sum, the purported notification and adjustment obligations were not triggered by the

JMJ transaction.  Accordingly, under any standard of review, BME falls short of establishing a

likelihood of success on the merits in this matter.

Plaintiff is also unable to establish a likelihood of success on the merits because, as

explained above, its theory of recovery is premised on speculation and guess-work.  In its

Memorandum of Law, Plaintiff states, "ACTC apparently issued shares at a price of $0.0353.  At

that price, ACTC was obligated to deliver 18,000,000 shares of its common stock to BME."

Memo of Law at 7.  Plaintiff provides no explanation as to how it arrived at this number and as

stated above, all JMJ conversions of principal amounts of the notes were done at the conversion rate of $0.10 per share.  Rabin Declaration ¶ 7.

Based on the foregoing, Plaintiff has not demonstrated a substantial likelihood of success on the merits.[6]

E.     **If An Injunction Is Granted, Plaintiff Should Be Required To Post A Bond**

Federal Rule of Civil Procedure 65(c) provides:

> No restraining order or preliminary injunction shall issue except
> upon the giving of security by the applicant, in such sum as the
> court deems proper, for the payment of such costs and damages as
> may be incurred or suffered by any party who is found to have
> been wrongfully enjoined or restrained.

The Second Circuit holds that, except in extraordinary circumstances which are not applicable here, courts must not order a preliminary injunction unless the applicant posts a bond. *See Doctor's Assocs., Inc. v. Distajio,* 107 F.3d 126, 136 (2d Cir. 1997) *cert. denied,* 522 U.S. 948 (1997).  *Nokia Corp. v. InterDigital, Inc.,* 645 F.3d 553, 557 (2d Cir. 2011) ("[s]ince a preliminary injunction may be granted on a mere probability of success on the merits, generally

---

[6]     While Plaintiff cites to cases in which courts have granted preliminary injunctions and compelled corporations to deliver shares in accordance with their contractual obligations, each of these cases, three of which are not published opinions and do not provide the necessary relevant background, is easily distinguishable.  In both *Celeste Trust Reg. and Esquire Trade & Finance, Inc. v. Greystone Digital Technology, Inc.,* 01 Civ. 91 (CBM) and *Alpha Capital Aktiengesellschaft et al. v. Group Management Corp.,* 2002 WL 31681798 (S.D.N.Y. Nov. 25, 2002) the court granted preliminary injunctions directing the defendant to issue stock in accordance with the terms of an *unconditional* contractual obligation.  By contrast, here, Advanced Cell's obligation to lower the exercise and conversion prices of the warrants and convertible notes and to increase the number of shares covered by the warrants was only triggered if Advanced Cell issued shares at a price lower than the exercise and conversion prices applicable to BME.  Advanced Cell did not issue shares at such a lower price.  In addition,– *Alpha Capital Aktiengesellschaft v. Advanced Viral Research Corp.,*2003 WL 328302 (S.D.N.Y. Feb. 11, 2003) and *Longview Special Finance v. Infinium Labs, Inc.,* 06 Civ. 1772 - each dealt with a defendant who, at the time of the ruling, was unlikely to be able to pay money damages at the end of the litigation.  That is not the case here.  *See* Rabin Declaration  ¶¶ 10-11.

the moving party must demonstrate confidence in his legal position by posting bond in an amount sufficient to protect his adversary from loss in the event that future proceedings prove that the injunction issued wrongfully") (citing *Edgar v. MITE Corp.,* 457 U.S. 624, 649 (1982)).

As explained above and in the Rabin Declaration, the harm that Advanced Cell would suffer if the Court grants the Motion will be severe.  Specifically, if the injunction is granted, it is likely to intensify the "chain reaction" of events that has already begun, leading to the ultimate destruction of Advanced Cell  Rabin Declaration ¶ 21.  Other holders of convertible notes and warrants are likely to join in on the "run on the bank," worried that if they do not pursue their claims fast enough, no more authorized shares will be left in Advanced Cell's treasury to satisfy their claims.  When the authorized shares run out, not only will slower holders of notes and warrants be "left holding the bag," but Advanced Cell's loyal employees also will be unable, through no fault of their own, to exercise their stock options.  At that point in time, Advanced Cell will be under attack from all sides, hemorrhaging cash to defend against a barrage of lawsuits.  That cash eventually will run out, and no new investor is likely to come in with new funds while these claims are pending.  The harm to Advanced Cell and its employees from a wrongfully imposed injunction is potentially "life-threatening" to the corporation and cannot be undone.  Rabin Declaration ¶ 21.

Notably, in the Alpha Action, the court declined to order Alpha Capital to post a bond, because it found the foregoing argument to be "highly speculative."  Order Granting Preliminary Injunction, *Alpha Capital Anstalt v. Advanced Cell Technology, Inc.*, 11 Civ. 6458 (PAC) (S.D.N.Y. 2011) (No. 15).  However, as demonstrated above, the argument can no longer be characterized as speculative as the race to the courthouse is well underway.

While there is no specific formula for determining the amount of the bond, it must be sufficient to "guarantee payment of costs and damages incurred by a party who is wrongfully

enjoined or restrained." *Interlink Int'l Fin. Svcs., Inv. v. Block,* 145 F.Supp.2d 312, 314

(S.D.N.Y. 2011).  The potential harm from the injunction simply is impossible to quantify.

Defendant therefore, requests that if the Court grants the relief requested in the motion, the Court

require Plaintiff to post a bond in the amount of the current market value of 18,000,000 shares of

Advanced Cell's common stock, or approximately $1.9 million.  *See Alpha Capital*

*Atiengesellschaft v. Advanced Viral Research Corp.,* No. 02 CV 10237, 2003 WL 328302, at *6

(S.D.N.Y. Feb. 11, 2003) (in an action by Plaintiff herein seeking a preliminary injunction on

behalf of holders of stock warrants, the court ordered the posting of a bond).

## IV. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court deny Plaintiff's

Motions.

DATED:   New York, New York
         November 7, 2011

                         SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                    By:  /s/ Daniel L. Brown
                       Daniel L. Brown (DB 0906)

                       Sheppard, Mullin, Richter & Hampton LLP
                       30 Rockefeller Plaza
                       New York, NY 10112
                       (212) 653-8700

                       *Attorney for Defendant Advanced Cell Technology, Inc.*