UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BLACK MOUNTAIN EQUITIES, INC.,

                              Plaintiff,

    -against-

ADVANCED CELL TECHNOLOGY, INC.,

                             Defendant.

11 Civ. 7305 (PAE)

AMENDED COMPLAINT



Plaintiff Black Mountain Equities, Inc. ("BME"), by its attorneys, Olshan Grundman Frome Rosenzweig & Wolosky LLP, for its Amended Complaint states:

## INTRODUCTION

1. In August 2011, BME acquired from another investor a warrant issued by defendant Advanced Cell Technology, Inc. ("ACTC") in March 2008. ACTC entered into an agreement in 2009 that adjusted the exercise price of the warrant from $0.165 to $0.10 per share, with a corresponding increase in the number of warrant shares, as required by the terms of the instrument. When plaintiff submitted the warrant for transfer on the books of ACTC in 2011, defendant issued a replacement warrant which did not reflect the share adjustment that occurred in 2009. A few days later, on August 31, 2011, BME sought to take advantage of the market through a cashless exercise of its warrant, properly delivering its Notice of Exercise. Pursuant to the Notice of Exercise, BME was entitled to 18,000,000 shares of ACTC common stock. Without justification or cause, ACTC has refused to honor the Notice of Exercise, refusing to deliver a single share to BME. In the interim, the price of ACTC stock has declined and there is a risk that it will decline further and BME will suffer financial loss as a result.

1512827-1

## PARTIES

2. Plaintiff Black Mountain Equities, Inc. ("BME") is a corporation duly organized and existing under the laws of the State of California with its principal place of business in San Diego, CA 92129.

3. Upon information and belief, Defendant Advanced Cell Technology, Inc. ("ACTC") is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Marlborough, MA 01752-1168.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because this is an action between citizens of diverse states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Additionally, the Securities Purchase Agreement and Warrant at issue in this case specify that "[e]ach party hereby irrevocably submits to the exclusive jurisdiction of the state and federal courts sitting in the City of New York, borough of Manhattan for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein (including with respect to the enforcement of any of the Transaction Documents), and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of any such court, that such suit, action or proceeding is improper or inconvenient venue for such proceeding." The Securities Purchase Agreement and Warrant also state that "[a]ll questions concerning the construction, validity, enforcement and interpretation of the Transaction Documents shall be governed by and construed and enforced in accordance with the internal laws of the State of New York, without regard to the principles of conflicts of law thereof."

5. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1404(a) because the Securities Purchase Agreement and Warrant provide that "[e]ach party

1512827-1

agrees that all legal proceedings concerning the interpretations, enforcement and defense of the transactions contemplated by this Agreement and any other Transaction Documents (whether brought against a party hereto or its respective affiliates, directors, officers, shareholders, employees or agents) shall be commenced exclusively in the state and federal courts sitting in the City of New York."

## FACTUAL BACKGROUND

### The Warrant

6. On March 31, 2008, ACTC closed on the issuance of $3,823,145 of its amortizing senior secured convertible debentures and associated warrants (the "2008 Financing"). In connection with the 2008 Financing, the Company entered into a Securities Purchase Agreement (the "Securities Purchase Agreement"), dated as of March 31, 2008, with the purchasers of the debentures and warrants (the "Purchasers"). The Purchasers acquired senior secured convertible debentures and warrants to purchase shares of the ACTC's common stock. Upon information and belief, T.R. Winston & Company, LLC ("TRW") received warrants pursuant to the Securities Purchase Agreement (the "Original Warrant"). The Original Warrant granted TRW the right to subscribe for and purchase up to six million three hundred fifty-five thousand six hundred twenty-nine (6,355,629) shares of ACTC common stock. The exercise price on the Original Warrant was $0.165 per share. The Original Warrant provides for an adjustment to its exercise price in the event ACTC issues securities below the Initial Exercise Price ($.165); there is also a corresponding adjustment to the number of shares.

7. In early 2009, ACTC issued shares at $.02 per share requiring adjustment to both the exercise price and the number of shares. ACTC, however, also ran out of authorized shares. In July 2009, ACTC resolved these issues with all warrantholders, as well as those who held

1512827-1

convertible debt, through a Consent Amendment and Exchange Agreement dated July 29, 2009 (the "Consent Agreement").

8. As a compromise, the Consent Agreement adjusted the exercise price on the Original Warrant, and all other similar warrants, from $0.165 to $0.10 per share. As a result, the shares to be issued by the Original Warrant increased. The Consent Agreement provides in paragraph 3(a):

> (a)  Adjustment to Exercise Price. The Exercise Price of the Warrants is hereby adjusted to equal $0.10 per share, subject to further adjustment therein. All references to the Exercise Price in the Warrants shall be amended to reflect such adjusted Exercise Price.

9. An adjustment of the exercise price from $0.165 to $0.10 required a corresponding adjustment to the number of shares covered by the Warrant. In the case of the Original Warrant, four million (4,000,000) shares increased to six million six hundred thousand (6,600,000) shares. Upon information and belief, ACTC performed similar adjustments with respect to holders of warrants identical to the Original Warrant. In its SEC filings, ACTC acknowledged that additional shares were due all warrants holders as a result of this adjustment. Its Form 10-K for 2009 states:

> The Company agreed to issue to each holder in exchange for the holder's amended and restated warrants (the "Amended and Restated Warrants"), *as well as additional warrants exercisable into 79,076,873 shares of the Company's common* stock for a total of warrants exercisable into 192,172,519 shares of common stock, both warrants containing a reduced exercise price of $0.10, subject to certain customary anti-dilution adjustments (including for stock splits, stock dividends, and certain subsequent equity sales). The termination date under the Amended and Restated Warrants was extended until June 30, 2014.

10. ACTC did not re-issue new warrants after the Consent Agreement. TRW thus retained the Original Warrant issued March 2008. On or about August 29, 2011, TRW assigned

to BME 4,000,000 of the 6,355,629 shares stated on the face of the Original Warrant. BME submitted the Original Warrant to ACTC's transfer agent so that a replacement warrant could issue in the name of BME. BME received from ACTC an "Amended and Restated Common Stock Purchase Warrant" (the "BME Warrant") with an exercise price of $0.10 per share, but with a share amount of 4,000,000 instead of 6,600,000. The BME Warrant bears an "original issue date" of July 29, 2009 and an "assignment date" of August 29, 2011.

<u>The Securities Issuance Giving Rise to an Adjustment to the Warrant's Exercise Price</u>

11. The BME Warrant contains adjustment provisions identical to the Original Warrant. In the BME Warrant, ACTC agreed that the Exercise Price of the BME Warrant was subject to downward adjustment in the event ACTC issued shares, or securities convertible into shares, after the original issue date (July 29, 2009) at a price lower than the initial Exercise Price.

12. In that event, ACTC was obligated to reduce the Exercise Price of the BME Warrant to such lower price so that the average price of the shares obtainable upon exercise of the BME Warrant was reduced to the new Exercise Price and to increase the number of shares covered by the BME Warrant so that the total initial dollar amount of the Exercise Price, upon exercise of the entire BME Warrant, would remain the same.

13. Thus, the BME Warrants provided, in relevant part:

> If the Company or any Subsidiary thereof, as applicable, at any time while this Warrant is outstanding, shall offer, sell, grant any option to purchase or offer, sell or grant any right to reprice its securities, or otherwise dispose of or issue (or announce any offer, sale, grant or any option to purchase or other disposition) any Common Stock or Common Stock Equivalents entitling any Person to acquire shares of Common Stock, at an effective price per share less than the then Exercise Price (such lower price, the "Base Share Price" and such issuances collectively, a "Dilutive Issuance"), as adjusted hereunder (if the holder of the Common Stock or Common Stock Equivalents so issued shall at any time, whether by operation of purchase price adjustments, reset provisions, floating

5

> conversion, exercise or exchange prices or otherwise, or due to warrants, options or rights per share which is issued in connection with such issuance, be entitled to receive shares of Common Stock at an effective price per share which is less than the Exercise Price, such issuance shall be deemed to have occurred for less than the Exercise Price on such date of the Dilutive Issuance), then the Exercise Price shall be reduced and only reduced to equal the Base Share Price and the number of Warrant Shares issuable hereunder shall be increased such that the aggregate Exercise Price payable hereunder, after taking into account the decrease in the Exercise Price, shall be equal to the aggregate Exercise Price prior to such adjustment. Such adjustment shall be made whenever such Common Stock or Common Stock Equivalents are issued. Notwithstanding the foregoing, no adjustments shall be made, paid or issued under this Section 3(b) in respect of an Exempt Issuance. The Company shall notify the Holder in writing, no later than the Trading Day following the issuance of any Common Stock or Common Stock Equivalents subject to this section, indicating therein the applicable issuance price, or of applicable reset price, exchange price, conversion price and other pricing terms (such notice the "Dilutive Issuance Notice"). For purposes of clarification, whether or not the Company provides a Dilutive Issuance Notice pursuant to this Section 3(b), upon the occurrence of any Dilutive Issuance, after the date of such Dilutive Issuance the Holder is entitled to receive a number of Warrant Shares based upon the Base Share Price regardless of whether the Holder accurately refers to the Base Share Price in the Notice of Exercise.

(Warrant Section 3(b).)

14. ACTC was also required to notify holders promptly of any event which required a downward modification of the Exercise Price and a commensurate increase in the number of shares covered by the BME Warrant. ACTC was obligated to provide holders with a statement setting forth the Exercise Price after any modification and setting forth a statement of facts requiring such modification.

15. Thus, the BME Warrant further provided, in relevant part:

> Whenever the Exercise Price is adjusted pursuant to this Section 3, the Company shall promptly mail to each Holder a notice setting forth the Exercise Price after such adjustment and setting forth a brief statement of the facts requiring such adjustment. If the Company issues a variable rate security, despite the prohibition thereon in the Purchase Agreement, the Company shall be deemed to have issued Common Stock or Common Stock Equivalents at the lowest possible conversion or exercise price at

1512827-1

        which such securities may be converted or exercised in the case of a
Variable Rate Transaction (as defined in the Purchase Agreement).

(Warrant Section 3(g)(i).)

16. Upon information and belief, during the first three months of 2010, ACTC issued securities to JMJ Financial, Inc. ("JMJ"), which required ACTC to reduce the Exercise Price by the issuance of the securities to JMJ or caused by any other share issuance since July 29, 2009.

17. Although obligated to do so, ACTC did not provide to BME the required notice and calculation of the reduction in the Exercise Price caused by the issuance of the securities to JMJ or caused by any other issuance since July 29, 2009.

18. Based upon public filings by ACTC, BME believes that the Exercise Price of its securities, since the beginning of 2010, has been reduced to at least $0.03.

BME's Notice of Exercise

19. On August 31, 2011, BME made a cashless exercise of its warrants, properly delivering its Notice of Exercise to ACTC. Pursuant to the Notice of Exercise BME was entitled to receive 18,000,000 shares of ACTC common stock, on or about September 6, 2011.

20. Without justification or cause, ACTC has refused to honor the Notice of Exercise, refusing to deliver a single share to BME.

FIRST CAUSE OF ACTION
(Failure to Deliver Shares - Relief Sought: Damages)

21. Plaintiff repeats the allegations in paragraphs 1 to 20 above.

22. Whatever the amount of shares due under the BME Warrant, there can be no doubt that ACTC breached. It did not deliver a single share in response to BME's Notice of Exercise. If ACTC had delivered the shares that BME believes were due (18,000,000 shares), those shares had a market value of at least $2,900,000. Alternatively, if the BME Warrant was

for 4,000,000 shares, then BME was entitled to approximately 10,000,000 ACTC shares, with a market value of at least $1,650,000.

23. BME, therefore, seeks an award of damages in an amount to be determined at trial, consistent with the foregoing.

24. In addition, BME is entitled to an award of attorneys fees, interest, and costs.

## SECOND CAUSE OF ACTION
(Reformation of the Warrant)

25. Plaintiff repeats the allegations in paragraphs 1 to 20 above.

26. Due to a an error on the part of ACTC, the BME Warrant states that it covers four million (4,000,000) shares not six million six hundred thousand (6,600,000) shares.

27. As a result, the Warrant must be reformed to reflect the terms of the Original Warrant, as modified. The reformation of the Warrant should keep the Exercise Price at $0.10 per share and cover six million six hundred thousand (6,600,000) shares. Plaintiff requests, therefore, that the Court enter an Order so reforming the Warrant.

## THIRD CAUSE OF ACTION
(Failure to Provide Notice of Reduction of Exercise Price - Relief Sought: Damages)

28. Plaintiff repeats the allegations in paragraphs 1 to 20 above.

29. Although obligated to do so pursuant to the BME Warrant and the Securities Purchase Agreement, ACTC failed to provide the notices and related calculations of the reduction in the Exercise Price of BME's securities.

30. As a result of such failure, BME has suffered damages.

31. BME, therefore, seeks an award of damages in an amount to be determined at trial.

WHEREFORE, Plaintiff prays that the Court award the following relief:

A. On the First and Fourth Causes of Action, for damages in an amount to be determined at trial;

B. On the First Cause of Action, BME requests an order reforming the Warrant so that it covers six million six hundred thousand (6,600,000) shares;

C. On all claims for relief, for interest, attorneys fees, and the costs and disbursements of this action; and

D. An award to Plaintiff of such other and further relief as the Court deems just and proper.

Dated: New York, New York
December 29, 2011

OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP

By: _____
Thomas J. Fleming (TF-4423)
Jennifer L. Heil (JH-4290)
*Attorneys for Plaintiff Black Mountain Enterprises, Inc.*
Park Avenue Tower
65 East 55th Street
New York, New York 10022
(212) 451-2300
tfleming@olshanlaw.com
jheil@olshanlaw.com

1512827-1